1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENAIL SHANE GREEN,<br><br>                                        Petitioner,<br><br>vs.<br><br>CHARLES M. HARRISON, Warden,<br><br>                                        Respondent. | Civil No.          05-1485 MMA (LSP)<br><br>**REPORT AND RECOMMENDATION RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

## I.      INTRODUCTION

Denail Shane Green, proceeding with counsel, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his San Diego County Superior Court conviction in case number SCD137792 for possession of cocaine base, a violation of California Penal Code section 11350(a).  (Resp'ts Lodgment No. 9 at 0122.)  Green claims his trial counsel was ineffective, there was insufficient evidence presented to support his conviction, he should have been sentenced to a drug diversion program instead of prison, the prosecution committed misconduct and his appellate attorney was ineffective.  (Pet. at 5-9; Pet'rs Supp. Mem. of P. & A. ("Pet'rs Mem.") at 1-22.)

The Court has considered the Petition, Petitioner's Supplemental Memorandum of Points and Authorities in Support of his Petition, Respondent's Answer and Memorandum of Points and Authorities in Support of the Answer, Petitioner's Traverse, the Lodgments and all other supporting documents

/ / /

1    submitted by the parties.  Based upon the documents and evidence presented in this case, and for the

2    reasons set forth below, the Court recommends that the Petition be **DENIED.**

3    **II.      FACTUAL BACKGROUND**

4            This Court gives deference to state court findings of fact and presumes them to be correct.

5    Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28

6    U.S.C. § 2254(e)(1)(2008); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of

7    historical fact, including inferences properly drawn from these facts, are entitled to statutory

8    presumption of correctness).

9                    A. *Prosecution Case*

10           During the afternoon of June 15, 1998, San Diego police officers responded to
     a tip that a man known as Monkey D was selling drugs in a motel room.  Officers
11   Andrew Spear, Rob Newquist, Jerry Hara and Sergeant Roy Moody went to the motel.
     As the officers approached the room, they encountered Nanette Shannon who had just
12   left.  Shannon identified herself and told the officers she was on parole.

13           Officer Spear then knocked on the motel room door.  Tammy answered the door.
     In response to the officers' questions, Greene identified herself as the renter of the room
14   and told the officers she was on probation and subject to a search condition.  On entering
     the motel room with Shannon and Greene, the officers saw Gaylon Kado sitting on a
15   chair.  Kado was the only other person in the room.

16           Officer Spear asked Greene if anyone else was in the room.  Greene said Monkey
     was in the bathroom.  Spear asked Greene to tell Monkey D to come out.  Greene
17   complied but no one came out.  Spear then pushed the bathroom door open and
     discovered appellant fidgeting with his pants and belt, acting as if he had just used the
18   toilet.  However, the toilet did not appear to have been recently used.  Spear told
     appellant to join the three women in the main room.  The bathroom window was partially
19   open and the security bars were bent outward.

20           The three officers searched the motel room for about 25 minutes but found no
     contraband.  During the search, Sergeant Moody walked around the outside of the room
21   and discovered a baggie containing 20 to 25 rocks of cocaine.  The baggie was on the
     ground directly outside the bathroom window.  Pursuant to a plan, Moody left the baggie
22   where he found it, the officers departed and Spear monitored the bathroom window from
     an apartment across the street.

23
             After the officers left, appellant told Greene "It's still there" and pointed to a bag
24   on the ground outside the bathroom window.  Shannon then told appellant she would
     retrieve the bag if appellant would give her one rock of cocaine.  Appellant agreed and
25   Shannon exited the motel room

26           Officer Spear observed Shannon walk to the back of the motel room and pick up
     the bag of rock cocaine.  She then handed the cocaine to appellant through the hole in
27   the bathroom window.  Spear radioed the information to the other officers.

28   / / /

Officers Hara and Newquist were the first to return.  As the officers approached the motel room, they saw appellant and the three women exiting.  Hara and Newquist detained the foursome and searched the room.  Hara found what was later determined to be 10.23 grams of cocaine base in a hair cream jar on a table outside the bathroom door.  Spear found $67 in cash on appellant.  Appellant was subsequently arrested and advised of his *Miranda* [footnote omitted] rights.

Appellant told Officer Spear the rock cocain belonged to Shannon and that Shannon asked appellant to help her retrieve the cocaine.  Upon Shannon's request, appellant contends he stood near the bathroom window, received the bag from Shannon and placed the rock cocaine on a table outside the bathroom.

B. *Defense Case*

Appellant admitted he knew the rock cocaine was in the bag but denies ownership, control or dominion over the rock cocaine.  Appellant contends he momentarily possessed the baggie to help Shannon recover the contraband.  Appellant's defense is consistent with his statements to Officer Spear.  Appellant also contends Officer Spear could not have clearly seen what he stated he saw from the apartment window across the street.

(Resp't Lodgment No. 1, Appx. A at 2-4.)

III.  **PROCEDURAL BACKGROUND**

On July 17, 1998, the San Diego County District Attorney's Office filed an information charging Denail Shane Green with possession of cocaine base for sale, a violation of California Heath and Safety Code section 11370(a).  (Resp't Lodgment No. 9 0001-03.)  The information also alleged that Green has suffered a prior conviction which made him ineligible for probation, within the meaning of California Penal Code ("Penal Code") section 1203(e)(4), that he had suffered a prior conviction for which he had served time in prison and had not remained free of the commission of a criminal offense within five years of his release, within the meaning of Penal Code section 667.5(b), and that he had suffered two prior "strike" convictions, within the meaning of Penal Code section 667(b)-(i) and 1170.12, California's Three Strikes Law.  (*Id.*)  Following a jury trial, Green was found not guilty of possession of cocaine base for sale but was convicted of the lesser included offense of possession of cocaine base.  (*Id.* at 0121-22.)  Green admitted his prior convictions and was sentenced to a total of twenty-six years to life.  (Resp't Lodgment No. 10, vol. 3 at 325-32; vol. 4 at 349.)

Green appealed his conviction to the California Court of Appeal for the Fourth Appellate District, Division One.  (Resp't Lodgment Nos. 6, 7, 8.)  In an unpublished opinion filed December 20, 2000, the state appellate court affirmed his conviction and sentence.  (Resp't Lodgement No. 1, Appx.

A.)  Green then filed a Petition for Review in the California Supreme Court, which denied the petition without citation of authority.  (Resp'ts Lodgment Nos. 1, 3.)

Green filed a petition for writ of habeas corpus in the San Diego Superior Court on July 15, 2005. (Pet'rs Lodgment No. 1.)  Petitioner then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on July 25, 2005 [doc. no. 1].  Due to questions regarding Green's competence, the Court appointed counsel to represent Green during proceedings to determine his competency.  (*See* Order dated August 15, 2005 [doc. no. 9].)  Following a hearing on Green's competence, counsel was appointed to represent Green in his habeas corpus proceedings.  (*See* Order dated June 5, 2005 [doc. no. 54].)

On September 7, 2005, the San Diego Superior Court issued a written, unpublished opinion denying Green's habeas corpus petition.  (Pet'rs Lodgment No. 2.)  Green thereafter filed a petition for writ of habeas corpus in the California appellate court, which that court denied in a written, unpublished opinion on December 6, 2005.  (Pet'rs Lodgment Nos. 3, 4.)  Green then filed a petition for writ of habeas corpus in the California Supreme Court on January 20, 2006, which that court denied on September 27, 2006 with citations to *In re Swain*, 34 Cal. 2d 300, 304 (1949) and *People v. Duvall*, 9 Cal. 4th 464, 474 (1995).  (Pet'rs Lodgment Nos. 5, 6.)

This Court granted Green's request for equitable tolling on January 23, 2008 and an Order finding Green's sixth claim exhausted was filed on September 3, 2008.  (*See* doc. nos. 84, 96.) Respondent filed an Answer and a Memorandum of Points and Authorities in Support of the Answer to the Petition on December 3, 2008 [doc. no. 100].  Petitioner filed a Traverse on March 16, 2009 [doc. no. 103].

**IV.**   **DISCUSSION**

   **A.**   **Scope of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody

pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C. § 2254(a) (2006) (emphasis added).  As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2006) (emphasis added).

"[The Anti Terrorism and Effective Death Penalty Act] establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F.3d 998, 1001 (9th Cir. 2007) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)).  To obtain federal habeas relief, Green must satisfy either § 2254(d)(1) or § 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes*

*v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  A state court, however, need not cite Supreme Court precedent when resolving a habeas corpus claim.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law.  *Id.*

**B.    Analysis**

Green raises six claims in his petition.  First, he argues his trial counsel rendered ineffective assistance when she failed to sufficiently cross-examine prosecution witnesses properly and failed to seek suppression of his statement to police.  He also claims the cumulative effect of counsel's errors constituted ineffective assistance.  (Pet. at 5; Pet'rs Mem. 7.2-7.9.)  Second, Green claims there was insufficient evidence presented to support his conviction.  (Pet. at 5; Pet'rs Mem. at 7.10-7.11.)  Third, he contends he should have been sentenced to a drug diversion program and not twenty-six years to life in prison.  (Pet. at 6; Pet'rs Mem. at 7.12-7.13.)  Fourth, he argues the prosecutor committed misconduct when he failed to disclose that he had promised leniency as part of a plea agreement with Nanette Shannon, Green's codefendant who pleaded guilty before trial, in exchange for her testimony.  (Pet. at 6; Pet'rs Mem. at 7.14-7.15.)  Fifth, Green contends any procedural default of his claims must be attributed to appellate counsel's ineffective assistance.  (Pet'rs Mem. at 7.16.)  Finally, Green claims the trial court erroneously denied his motion to suppress evidence in violation of his Fourth Amendment rights.  (*Id.* at 7.17- 7.21.)

Respondent counters that the state court's denial of Green's ineffective assistance of counsel claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Resp'ts Mem. of P. & A. Supp. Answer ("Resp'ts Mem.") at 6-10.)  As to Green's sufficiency of the evidence claim, Respondent contends it is procedurally defaulted, and that, in any event, it fails on the merits.  (*Id.* at 10-13.)  Respondent argues Green's claim regarding diversion does not state a federal constitutional claim.  (*Id.* at 13.)  As to Green's prosecutorial misconduct claim, Respondent argues the state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (*Id.* at 13-14.)  Respondent claims Green's ineffective assistance of appellate counsel claim lacks merit.  (*Id.* at 14.)  Finally, Respondent notes that Green's Fourth Amendment claim is not cognizable on federal habeas under *Stone v. Powell*, 428 U.S. 465 (1976).

1.     *Ineffective Assistance of Trial Counsel*

Green alleges that his trial counsel did not effectively cross-examine Green's codefendant Nanette Shannon, Andrew Spear, the police officer who saw Shannon hand the baggie of cocaine to Green through the bathroom window and Steven Cordes, the criminalist who tested the cocaine. (Pet'rs Mem. at 7.2-7.7.)  Specifically, Green claims trial counsel should have impeached Shannon with her prior convictions and should have questioned her motives for testifying against Green.  (*Id.* at 7.2-7.3.) Green also claims trial counsel should have more thoroughly questioned Spear regarding how clearly he could view the area outside the bathroom window from his vantage point, and should have questioned Cordes more vigorously given that he did not personally test the cocaine.  (*Id.* at 7.3-7.7.)  Green also argues that his statement to police was taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and that counsel should have moved to suppress his statement.  (*Id.* at 7.8-7.9.)  Finally, he argues that the cumulative effect of counsel's errors rendered counsel's performance ineffective.  (*Id.* at 7.9.) Respondent counters that the state court's resolution of these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Resp'ts Mem. at 6-10.)

Green raised this claim in his petition for review he filed in the California Supreme Court, which denied the petition with citations to *Swain* and *Duvall*.  (*See* Pet'rs Lodgment Nos. 5, 6.)  The portions of *Swain* and *Duvall* cited by the state supreme court refer to the need for a petitioner to provide sufficient information in the petition to warrant relief, and Respondent does not allege a procedural bar as to this claim.  Thus, this Court must "look through" to the state appellate court's opinion denying this claim as the basis for its analysis.  That court wrote:

> Green faults counsel for not impeaching codefendant Nanette Shannon with her prior convictions and eliciting that she had a "plea deal" for a lenient sentence if she testified against him.  Green also claims the prosecutor committed misconduct by not disclosing the "plea deal."  The record shows Shannon testified as a hostile witness and was not given "promises" for her testimony.  Shannon admitted she had prior convictions for possession of cocaine base, robbery and shoplifting.  Defense counsel elicited from Shannon that she was found guilty in this case but had yet to be sentenced and hoped for leniency.  Green has not established Shannon had an undisclosed "plea deal."
>
> Green also claims defense counsel did not vigorously cross-examine the arresting officer and the criminalist.  Green has not established what counsel could have elicited that would have achieved a better outcome at trial.

(Pet'rs Lodgment No. 4 at 2.)

1    To establish ineffective assistance of counsel, Green must first show that her trial counsel's

2  performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S.

3  668, 687 (1984).  "This requires a showing that counsel made errors so serious that counsel was not

4  functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Judicial scrutiny

5  of counsel's performance must be "highly deferential."  *Id.* at 689.  Second, he must show counsel's

6  deficient performance prejudiced the defense.  *Id.* at 687.  This requires a showing that counsel's errors

7  were so serious they deprived Green "of a fair trial, a trial whose result is reliable."  *Id.*  To satisfy the

8  prejudice prong, Green must demonstrate a reasonable probability that the result of the proceeding

9  would have been different absent the error.  *Id.* at 694.  "A reasonable probability is a probability

10  sufficient to undermine confidence in the outcome."  *Id.*  The prejudice inquiry is to be considered in

11  light of the strength of the prosecution's case.  *Luna v. Cambra*, 306 F.3d 954, 966 (9th Cir.), *amended*,

12  311 F.3d 928 (9th Cir. 2002).

13    a.    *Failure to Sufficiently Cross-Examine Shannon*

14    Green argues counsel should have more effectively cross-examined Shannon by questioning her

15  about her prior convictions, how her drug use had affected her competence, her memory and on the plea

16  deal and leniency she expected to receive in return for her testimony against Green.  (Pet'rs Mem. at 7.2-

17  7.3.)   Respondent contends the state court's denial of this claim was neither contrary to, nor an

18  unreasonable application of, clearly established Supreme Court law.  (Resp'ts Mem. at 6-7.)

19    The prosecutor elicited the fact that Shannon was testifying under a subpoena, that he had not

20  made any promises regarding her case, and that she had prior convictions for possession of cocaine base,

21  felony robbery and theft. (Lodgment No. 10, vol. 1 at 38, 49.)  On cross-examination, defense counsel

22  questioned Shannon about her case, establishing that Shannon had pleaded guilty to possession of

23  cocaine base and was hoping for leniency in her sentence in return for her testimony.  (*Id.* at 50.)

24  Counsel also established that Shannon had been using cocaine before her arrest and that she wanted a

25  piece of the rock cocaine in the baggie.  (*Id.* at 54.)  While counsel did not question Shannon explicitly

26  about the extent of her addiction and its effects upon her perception, the jury was clearly informed that

27  Shannon was a drug addict with a criminal record who was hoping for something in return for her

28  testimony.  It is difficult for the Court to see what strategic purpose further questioning about these

1   matters could have served and thus how counsel's failure to do so fell below an objective standard of

2   reasonableness.  *See Strickland*, 466 US. at 687.

3         Further, Green has not shown what further questioning would have revealed and how the

4   outcome would have been different if counsel had more thoroughly questioned Shannon. *See id.* at 687-

5   94.  Indeed, the jury was instructed that Shannon was an accomplice in the possession of cocaine base,

6   that her testimony was therefore to be viewed with distrust, and that, as an accomplice, her testimony

7   must be corroborated.  (*See* Lodgment No. 9 at 0088-92; California Criminal Jury Instructions

8   ("CALJIC") Nos. 3.11, 3.12, 3.14, 3.16, 3.18.)  Thus, Green has not established that he was prejudiced

9   by any error by counsel.  *See Strickland*, 466 U.S. at 689-94.

10        For all the foregoing reasons, the Court concludes the state court's denial of this claim was

11  neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

12  *Williams*, 529 U.S. at 412-13.  Green is not entitled to relief as to this claim.

13        b.     *Failure to Sufficiently Cross-Examine Spear*

14        Green claims trial counsel failed to sufficiently cross-examine Officer Spear, the police officer

15  who testified he observed Shannon hand the baggie of rock cocaine to Green through the bathroom

16  window from across the street.  (Pet'rs Mem. at 7.3-7.7.)  Specifically, Green contends trial counsel did

17  not "rigorously cross-examine Spear himself regarding his view being obscured, the officer's [vantage]

18  point, distance and whether the baggie had been marked for identification to ensure that it was the same

19  baggie supposedly received by petitioner." (*Id.* at 7.7.)  Respondent argues the state court's resolution

20  of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme

21  Court law.  (Resp't Mem. at 7-9.)  The last reasoned state court decision which addresses this claim

22  is the state appellate court's opinion denying Green's habeas corpus petition.  *See Ylst*, 501 U.S. at 801-

23  06.  That court concluded Green "[had] not established what counsel should have elicited that would

24  have achieved a better outcome at trial."  (Pet'rs Lodgment No. 4 at 2.)

25        Spear testified that before he crossed the street to assume his vantage point he could clearly see

26  the baggie Sergeant Moody had replaced on the ground outside the window.  (Lodgment No. 10, vol.1

27  at 102-03.)  There was no other debris on the ground near the baggie.  (*Id.* at 103.)  When he arrived at

28  his vantage point across the street, he could not see the baggie on the ground because there was a hedge

in the way. (*Id.* at 103.) He did see Shannon, however, arrive outside the bathroom window, bend down to pick up the baggie and hand it to Green through the bathroom window. (*Id.* at 108.) Spear was sure it was Green because he could see that the clothing the individual inside the bathroom had the same clothes that Green had had on when officers initially entered the motel room. (*Id.*)

It is true that trial counsel did not specifically question Spear about the distance between his vantage point and the bathroom window and whether the baggie was marked in some way so as to assure that it was the same baggie later discovered in the motel room. Green's counsel did ask Spear how far his vantage point was from the baggie, to which Spear answered that he did not know but that it was across the street. (*Id.* at 123.) Counsel's main evidence regarding whether Spear could see and accurately identify Green from across the street, however, was defense investigator Steven Blake. Blake testified extensively on the subject of whether Spear cold have seen what he claimed to have seen from across the street. Blake testified the glass in the bathroom window was opaque and there were venetian blinds installed over the window. (*Id.* at 197.) He also testified there was an eight-foot fence surrounding the motel. (*Id.* at 200.) In addition, Blake discussed photographs he took from inside the apartment from which Spear claimed he viewed the baggie exchange. (*Id.* at 2200-02.) The view of the bathroom window was blurry. (*Id.* at 206.) He calculated the distance between Spear's vantage point and the motel as ninety-six feet. (Lodgment No. 10, vol. 2 at 203.)

Given Blake's testimony, counsel could have reasonably concluded that further questioning of Spear about his ability to see the exchange from the apartment across the street would not have produced any helpful information and would perhaps focused unwanted attention on the definitiveness of Spear's testimony. *See Strickland*, 466 U.S. at 687. Moreover, Green has not established that prejudice as a result of trial counsel's failure to more thoroughly cross-examine Spear because he has not shown what further information counsel would have elicited had she done so. *Id.* at 689-94. Accordingly, Green is not entitled to relief as to this claim. *Williams*, 529 U.S. at 412-13.

c.    *Failure to Sufficiently Cross-Examine Cordes*

Green also alleges trial counsel failed to sufficiently cross-examine Steven Cordes, the criminalist who testified that the substance in the baggie was cocaine base, failed to object to his testimony pursuant to California Evidence code section 702 because he did not personally perform the

1    testing and failed to hire a defense expert to test the substance.  (Pet'rs Mem. at 7.7.)  Respondent

2    contends the state court's resolution of this claim was neither contrary to, nor an unreasonable

3    application of, clearly established Supreme Court law because Green has presented no evidence that

4    further cross-examination would have been useful, any objection to Cordes' testimony would have been

5    futile pursuant to California Evidence Code section 801 and there is no evidence that further testing of

6    the substance would have yielded different results.  (Resp'ts Mem. at 9.)  The last reasoned state court

7    decision to which this Court must look is the state appellate court's opinion denying the claim.  *Ylst*, 501

8    U.S. at 801-06.  As with Green's claim relating to Spear, the court concluded that Green "had not

9    established what counsel could have elicited that would have achieved a better outcome at trial."  (Pet'rs

10   Lodgment No. 4 at 2.)

11         Cordes reviewed the documents associated with the testing of the baggie's contents and testified

12   that another criminalist, Larry Dale, had performed the analysis.  (Lodgment No. 10, vol. 2 at 181-86.)

13   Dale is a criminalist who is qualified in the analysis of controlled substances and, according to the

14   documentation reviewed by Cordes, had performed testing on the baggie's contents in accordance with

15   the San Diego Police Department's Crime Lab.  (*Id.* at 181 - 84.)  The results of his findings were that

16   the baggie contained 10.23 grams of a substance that contained cocaine base.  (*Id.* at 186.)

17         As Respondent points out, California Evidence Code section 702 states, in pertinent part,

18   "*Subject to Section 801*, the testimony of a witness concerning a particular matter is inadmissible unless

19   he has personal knowledge of the matter."  (Cal. Evid. Code § 702(a)) (emphasis added.)  Section 801

20   provides, as follows:

21              If a witness is testifying as an expert, his testimony in the form of an opinion is
              limited to such an opinion as is:

22              (a) Related to a subject that is sufficiently beyond common experience that the

23              opinion of an expert would assist the trier of fact; and

24              (b) Based on matter (including special knowledge, skill, experience, training, and
              education) *perceived by or personally known to the witness or made known to him at or

25              before the hearing, whether or not admissible, that is of a type that reasonably may be
              relied upon by an expert in forming an opinion upon the subject to which his testimony

26              relates*, unless an expert is precluded by law from using such matter as a basis for his
              opinion.

27

28   (Cal. Evid. Code § 801) (emphasis added.)

1    Thus, Cordes properly testified that the substance in the baggie was cocaine base, even though

2    he had not personally tested the material, and, as Respondent correctly argues, any objection to his

3    testimony would have been futile.  Trial counsel's failure to object to Cordes's testimony was therefore

4    not unreasonable.  *Strickland*, 466 U.S. at 687.

5    As to trial counsel's failure to hire a defense expert to test the baggie's contents, as Respondent

6    correctly asserts, Green has provided no evidence that the results of any such testing would have yielded

7    negative results or would have altered the result in this case.  Accordingly, he has not established he was

8    prejudiced by counsel's failure to take this step.  *Strickland*, 466 U.S. at 689-94.  For all the foregoing

9    reasons, Green is not entitled to relief as to this claim.  *Williams*, 529 U.S. at 412-13.

10          d.    *Failure to Challenge the Admissibility of Green's Statement to Police*

11    Green contends trial counsel rendered ineffective assistance by failing to challenge the

12    admissibility of his statements to police, pursuant to California Penal Code section 1538.5, on the

13    ground that his *Miranda* rights were violated.  (Pet'rs Mem. at 7.8.)  Respondent counters that there was

14    no evidence upon which such a motion could have been brought because Officer Spear testified that he

15    read Green his *Miranda* rights and that Green said he understood his rights and wanted to talk to Spear.

16    (Resp'ts Mem. at 9.)  The state appellate court's opinion denying this claim is the last reasoned state

17    court decision to which this Court must look under *Ylst*.  *See Ylst*, 501 U.S. at 801-06.  The court

18    resolved the claim on the by stating that under California law, a motion to suppress pursuant to Penal

19    Code section 1538.5 cannot be used to suppress admissions on the ground that they were taken in

20    violation of the Federal Constitution.  (Pet'rs Lodgment No. 4 at 1.)  Accordingly, because the state

21    court did not address the merits of Green's federal constitutional claim, this Court must analyze the

22    claim *de novo*.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2003).

23    Spear testified that after his arrest and transport to the central police station, he read Green his

24    *Miranda* rights and that Green waived them.  (Lodgment No. 10, vol. 1 at 114.)  Green then stated that

25    the cocaine belonged to Shannon, not him, and that Shannon had asked him to stand by the bathroom

26    window while she went outside, picked up the baggie and handed it through the window to him.  (*Id.*)

27    Green said after Shannon handed him the baggie, he put it on a table in the motel room just outside the

28    bathroom.  (*Id.* at 115.)  Green admitted he knew the baggie contained cocaine base.  (*Id.* at 114.)  On

cross-examination, Spear admitted that the boxes in police report associated with Green's statement which indicated that Green had been given his *Miranda* rights and that he waived those rights were not checked.  (*Id.* at 120.)  Spear testified this was an error, that the report was filled out by Officer Newquist, that he did indeed *Mirandize* Green and that Green waived his rights before giving his statement.  (*Id.*)

A suspect who is subject to custodial interrogation must be advised of his federal constitutional right to remain silent and his right to have an attorney present during questioning.  *Miranda*, 384 U.S. 436.  If the suspect invokes his right to counsel, "the interrogation must cease until an attorney is present."  *Id.* at 474.  A suspect "may not be subjected to further interrogation unless [he] (1) initiates further discussion with the police,  and (2) knowingly and intelligently waives the right he previously invoked."  *Shedelbower v. Estelle*, 885 F.2d 570, 573 (9th Cir. 1989) (citing *Smith v. Illinois*, 469 U.S. 91 (1984) (per curiam) and *Oregon v. Bradshaw*, 462 U.S. 1039, 1042-45 (1983)).

Counsel could have reasonably decided not to challenge the admissibility of Green's statement because it was consistent with Green's defense that he did not exercise dominion and control over the cocaine in the baggie.  *Strickland*, 466 U.S. at 687.  Moreover, Green has not established he was prejudiced by counsel's failure to bring such a motion.  *Id.* at 689-94.  Even if Green's statement had been suppressed, the jury would still have heard both Shannon and Spear testify that Shannon passed the baggie to Green through the bathroom window.  (*See* Lodgment No. 10, vol. 1 at 46-47, 105-09.)  Thus, Green is not entitled to relief as to this claim.  *Williams*, 529 U.S. at 412-13.

e.    *Cumulative Error*

Green argues that the cumulative effect of counsel's errors rendered her assistance ineffective.  (Pet'rs Mem. at 7.9.)  While any single error may not have deprived a defendant of due process when considered alone, a series of errors may have the cumulative effect of denying a defendant due process when considered together.  *See Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000).  As discussed above in section IV(B)(1)(a)-(d), however, none of trial counsel's alleged errors rise to the level of ineffective assistance.  Thus, there is no cumulative error, and Green is not entitled to relief as to this claim.  *Williams*, 529 U.S. at 412-13.

/ / /

1       2.      *Sufficiency of the Evidence*

2       Green claims there was insufficient evidence presented to establish every element of the crime

3  of possession of cocaine base. (Pet'rs Mem. at 7.10-7.11.) Respondent counters that the Green

4  procedurally defaulted this claim because the state appellate court imposed the independent and

5  adequate state procedural bar of *In re Lindley*, 29 Cal. 2d 709, 723 (1947) in its denial of this claim and

6  that, in any event, it fails on the merits. (Resp'ts Mem. at 10-13.)

7       The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent

8  must first have "adequately pled the existence of an independent and adequate state procedural

9  ground . . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to place the defense at

10  issue, Green must then "assert[] specific factual allegations that demonstrate the inadequacy of the state

11  procedure . . . ." *Id.* The "ultimate burden" of proving procedural default, however, belongs to the state.

12  *Id.* If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless Green

13  can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal

14  law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of

15  justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

16       Green last raised his sufficiency of the evidence claim in the habeas corpus petition he filed in

17  the California Supreme Court. Thus, contrary to Respondent's assertion, the state supreme court's

18  denial is the last state court decision, not the state appellate court's opinion imposing the *Lindley* bar.

19  *See Coleman v. Thompson*, 501 U.S. 722, 735 (1991). The state supreme court denied the petition with

20  citations to *Swain*, 34 Cal. 2d at 304 and *Duvall*, 9 Cal. 4th at 474 which indicate the court found Green

21  had not provided the court with sufficient facts to state a prima facie case or relief. *See Gaston v.*

22  *Palmer*, 417 F.3d 1030, 1038-39 (9th Cir. 2005). Had the California Supreme Court intended to impose

23  the *Lindley* bar, it could have easily issued a postcard denial or included a citation to *Lindley* together

24  with its citations to *Swain* and *Duvall*. *See Ylst*, 501 U.S. at 803. The Court therefore concludes

25  Respondent has not met his initial burden under *Bennett* to establish a procedural bar.

26       In any event, established precedent in this Circuit dictates that a court's decision on the issue of

27  procedural default is to be informed by furthering "the interests of comity, federalism, and judicial

28  efficiency." *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998). Thus where, as here, deciding

the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claims on their merits and forgo an analysis of cause and prejudice. *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982). Because there is no reasoned opinion to which this Court can look for its analysis, the Court must conduct an *de novo* review of Green's sufficiency of the evidence claim. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2003).

In assessing a sufficiency of the evidence claim, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In determining whether sufficient evidence has been presented, the Court must accept the elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 324 n.16. In California, in order to convict a defendant of a violation of Health and Safety Code section 11350, possession of cocaine base, the following elements must be proved beyond a reasonable doubt:

> 1.  A person exercised control over or the right to control an amount of cocaine base, a controlled substance;
>
> 2.  That person knew of its presence;
>
> 3.  That person knew of its nature as a controlled substance; and
>
> 4.  The substance was in an amount sufficient to be used as a controlled substance.

(Lodgment No. 9 at 0097-98; CALJIC No.12.00.)

CALJIC No. 12.00 also defines two different types of possession, actual possession and constructive possession. "'Actual possession' requires that a person knowingly exercise direct physical control over a thing." (Lodgment No. 9 at 0087; CALJIC No. 12.00.) "'Constructive possession' does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons." (Lodgment No. 9 at 0097; CALJIC No. 12.00.) Lastly, under California law, two or more people may jointly possess a thing, either actually or constructively. (Lodgment No. 9 at 0097; CALJIC No. 12.00.)

/ / /

Police officers searched a motel room at the La Crest motel after receiving information from a source that criminal activity was occurring in one of the rooms. (Lodgment No. 10, vol. 1 at 58.) Officers Newquist and Spear found Green in the bathroom but it did not appear that the toilet had been used. (*Id.* at 67, 94-95.) The bathroom window was slightly open. (*Id.* at 68.) Officer Moody, searching outside the room, found a baggie containing what was later determined to be cocaine based on the ground directly outside the open bathroom window. (*Id.* at 147-48; Lodgment No. 10, vol. 2 at 186.) After finding no contraband in the room, the officers decided to replace the baggie of cocaine where they had found it. Officer Spear, observing from a concealed location, saw Nanette Shannon walk over to the baggie on the ground, pick it up and hand it to Green through the open bathroom window. (*Id.* at 107-08.) Spear was sure Green was the individual in the window because he was wearing the same green outfit Spear had seen him in when he searched the motel room. (*Id.* at 108.) Shannon testified that after police left the motel room the first time, Green looked out the bathroom window, saw the baggie of cocaine on the ground and told her, "It's still there." (Lodgment No. 10, vol. 1 at 45-46.) Shannon told Green she would go outside and retrieve the baggie if he would give her a rock. (*Id.* at 46.) Green agreed and Shannon left the motel room, picked up the baggie and handed it to Green through the bathroom window. (*Id.* at 46-47.) Criminalist Steven Cordes testified the substance in the baggie was cocaine base. (Lodgment No. 10, vol. 2 at 186.) Taken together, this evidence established that Green exercised control or the right to control the cocaine base, had either actual or constructive possession of it and knew of its presence. (*See* CALJIC No. 12.00.)

Sufficient evidence was also presented that Green knew the substance in the baggie was cocaine. (CALJIC No. 12.00.) Spear testified Green told him the substance in the baggie was "rocks," which Spear testified meant cocaine base. (Lodgment No. 10, vol. 1 at 114.) Sufficient evidence was also presented that the substance was in an amount sufficient to be used as a controlled substance. (CALJIC No. 12.00.) Detective Michael Aiken, a narcotics expert, testified the baggie contained numerous rocks of cocaine which could be sold for ten or twenty dollars a piece. (*Id.* at 163.)

Green argues that because Shannon was a drug addict and hoped for leniency, her testimony could not be believed and was insufficient to support his conviction. (Pet'rs Mem. at 7.10-7.11.) / / /

1  Whether to credit Shannon's testimony, however, is within the province of the jury.  Moreover, as

2  discussed above, evidence other than Shannon's testimony supports Green's conviction.

3          Taken in the light most favorable to the prosecution, as this Court must do under *Juan H.*, the

4  Court concludes sufficient evidence was presented at trial to support Green's conviction for possession

5  of cocaine base.  *See Juan H.*, 408 F.3d at 1274.  He is not entitled to relief as to this claim.

6          3.      *Diversion*

7          Green argues that under California law, he should have been referred to a drug diversion

8  program instead of receiving a sentence of twenty-six years to life.  (Pet'rs Mem. at 7.12.-7.13.)

9  Respondent counters that Green has not stated a cognizable claim for federal habeas review because he

10  merely challenges the interpretation and execution of a state law.  (Resp't's Mem. at 12-13.)   Green

11  raised this claim in his habeas corpus petition filed in the California Supreme Court, which rejected it

12  with citations to *Swain* and *Duvall*.  (Pet'rs Lodgment Nos. 5, 6.)[1]  That court analyzed the claim under

13  California law, concluding that because "Green was charged with possession for sale of cocaine base

14  (Heal. & Saf. Code, § 11352.5) [he was] ineligible for [drug diversion] under [Penal Code] section

15  1000."  (Petr's Lodgment No. 4 at 2.)

16          Federal habeas relief is not available for an alleged error in the interpretation or the application

17  of state law.  *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "In conducting

18  habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws

19  or treaties of the United States."  *Estelle*, 502 U.S. at 68.  Here, as Respondent correctly points out,

20  Green's claim consists solely of challenge to the state's application of its own laws.  Green cites *United*

21  *States v. Cruz*, 127 F.3d 791 (9th Cir. 1997, *United States v. Hunt*, 129 F.3d 739 (5th Cir. 1997), *United*

22  *States v. Garcia-Sanchez*, 189 F.3d 1143 (9th Cir. 1999) and *United States v. Estrada-Macias*, 218 F.3d

23  1064 (9th Cir. 2000) in support of his claim.  These cases, however, do not support Green's claim.

24  Rather, they involve federal prosecutions for simple possession and possession for sale of cocaine and

25  cocaine base and do not establish any federal constitutional right to be sentenced to a drug diversion

26  program.  For all the foregoing reasons, Green is not entitled to relief as to this claim.

27  / / /

28

---

[1]  Respondent does not allege any procedural bar with respect to this claim.  (*See* Resp't's Mem. at 13.)

1    4.    *Prosecutorial Misconduct*

2        Green argues that the prosecutor in his case committed misconduct when he failed to disclose

3    an agreement between himself and Shannon for leniency in exchange for her testimony.  (Pet'rs Mem.

4    at 7.14-7.15.)  Respondent counters that the state court's denial of this claim was neither contrary to,

5    nor an unreasonable application of, clearly established Supreme Court law.  (Resp'ts Mem. at 13-14.)

6        Green raised this claim in the habeas corpus petition he filed in the California Supreme Court.

7    (Pet'rs. Lodgment No. 5.)  That court denied the petition, with citations to *Swain* and *Duvall*.  (Pet'rs

8    Lodgment No. 6.)  Accordingly, this Court must "look through" to the California Appellate Court's

9    opinion denying the claim.  *Ylst*, 501 U.S. at 801-06.  Contrary to Respondent's claim, the state appellate

10   court did not address Green's prosecutorial misconduct claim, but only addressed the existence of any

11   plea deal between Shannon and the prosecution in the context of Green's ineffective assistance of

12   counsel claim.  (*See* Pet'rs Lodgment No. 4 at 1.)  Because the last reasoned state court opinion did not

13   address the claim, this Court must conduct an independent review of the record to determine whether

14   the state courts' denial of the claim was contrary to, or an unreasonable application of, clearly

15   established Supreme Court law.  *Himes*, 336 F.3d at 853.

16       The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) that due process requires

17   a prosecutor to disclose all material evidence, including impeachment evidence, to the defendant.

18   *Brady*, 373 U.S. at 87;  *United States v. Bagley*, 473 U.S. 667, 676, 678 (1985).  In order to establish

19   a *Brady* violation, Petitioner must show (1) the evidence was suppressed by the prosecution, either

20   willfully or inadvertently; (2) the withheld evidence was exculpatory or impeachment material; and (3)

21   he was prejudiced by the failure to disclose. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Benn*

22   *v. Lambert*, 283 F.3d 1040, 1052-53 (9th Cir. 2002) (citing *Bagley*, 473 U.S. at 676, 678 and *United*

23   *States v. Agurs*, 427 U.S. 97, 110 (1976).)

24       Although the existence of a plea agreement between Shannon and the prosecution would have

25   been impeachment evidence subject to disclosure under *Brady*, Green has not established that the

26   prosecution suppressed any such evidence because he has not shown this Court any evidence that such

27   a plea deal existed.  Shannon testified she had been brought to court via a subpoeana and that no

28   promises had been made to her regarding her testimony at Green's trial.  (Lodgment No. 10, vol. 1 at

     38.)

On cross-examination, Shannon testified that although she had pleaded guilty to possession of cocaine base, she had not yet been sentenced and was hoping to receive some leniency in sentencing as a result of her testimony in Green's case.  (*Id.* at 50.)  There is no evidence before the Court of any further agreement between Shannon and the prosecution.  Thus, Green has not shown that any material, exculpatory or impeachment evidence was suppressed.  *See Strickler*, 527 U.S. at 281-82.

For all the foregoing reasons, the state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13. Green is not entitled to relief as to this claim.

5.    *Ineffective Assistance of Appellate Counsel*

At page 7.16 of Green's Memorandum of Points and Authorities in Support of his Petition, Green contends that no procedural bar should apply to his case because he asked his appellate counsel to present the same claims as he alleges in his federal petition and counsel refused to do so.  (Pet'rs Mem. at 7.16.)  Respondent states that a procedural default defense has been raised only as to the sufficiency of the evidence claim.  (Resp'ts Mem. at 14.)  To the extent Green is seeking to raise an ineffective assistance of counsel claim, Respondent contends the claim lacks merit because there is no reasonable probability that Green would have prevailed on appeal absent any error by counsel.  (*Id.*)

Green raised this claim in the habeas corpus petition he filed in the California Supreme Court. (Pet'rs. Lodgment No. 5.)  That court denied the petition, with citations to *Swain* and *Duvall*.  (Pet'rs Lodgment No. 6.)  Accordingly, this Court must "look through" to the California Appellate Court's opinion denying the claim.  *Ylst*, 501 U.S. at 801-06.  Because that court did not address this claim, (*see* Pet'rs Lodgment No. 4), this Court must conduct an independent review of the record to determine whether the state courts' denial of the claim was contrary to, or an unreasonable application of, clearly established Supreme Court law.  *Himes*, 336 F.3d at 853.

As discussed above in section IV(B)(2), this Court has declined to find any claims are procedurally defaulted, and to that extent, Green's claim should be denied.  As to any claim by Green that appellate counsel was ineffective, "[t]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in Strickland."  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)).  To establish the prejudice prong, Green must show a reasonable probability that he would have prevailed on appeal absent counsel's errors.

1  *Smith*, 528 U.S. at 285 (citing *Strickland*, 466 U.S. at 694).  "The performance component need not be

2  addressed first '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

3  prejudice, which we expect will often be so, that course should be followed." *Id.* at 285, n.144 (citing

4  *Strickland*, 466 U.S. at 697).

5         As Respondent correctly argues, Green has not established that he was prejudiced by counsel's

6  failure to raise the claims he raises in his current federal petition because he has not established he

7  would have prevailed on appeal had counsel raised them.  *Smith*, 528 U.S. at 285.  Accordingly, he is

8  not entitled to relief.  *Williams*, 529 U.S. at 412-13.

9         6.   *Fourth Amendment*

10         Green argues the state courts erred in denying his motion to suppress evidence based on a

11  violation of his Fourth Amendment rights during the search of the motel room.  (Pet'rs Mem. at 7.17-

12  7.21.)  As Respondent points out, "where the state has provided an opportunity for full and fair

13  litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief

14  on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."

15  *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Woolery v. Arave*, 8 F.3d 1325, 1326 (9th Cir. 1993).  Under

16  California law, Green had the opportunity to litigate, and in fact did litigate, the suppression of evidence

17  on the ground that the warrantless search of the motel room violated the Fourth Amendment.  *See*

18  Lodgment No. 9 at 0004-08; *see also* Cal. Penal Code § 1538.5; *Gordon v. Duran*, 895 F.2d 610, 613

19  (9th Cir. 1990).  In addition, he raised this claim in his direct appeal both at the appellate court and

20  supreme court levels.  (*See* Lodgment Nos. 1, 2, 3.)  Because Green had such an opportunity state court,

21  he is not entitled to federal habeas relief.  *Stone*, 428 U.S. at 494; *Gordon*, 895 F.2d at 613-14.

22  **V.     CONCLUSION AND RECOMMENDATION**

23         The Court submits this Report and Recommendation to the United States District Judge Michael

24  M. Anello, under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court

25  for the Southern District of California.  For the reasons outlined above, **IT HEREBY**

26  **RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and

27  Recommendation, and (2) directing that Judgment be entered denying the Petition

28  / / /

**IT IS ORDERED** that no later than **June 8, 2009,** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **June 29, 2009** .  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  May 6, 2009

Hon. Leo S. Papas
U.S. Magistrate Judge